# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| NORMAN HUSAR, individually and on behalf of all others similarly situated, 4323 Cappel Drive Cincinnati, OH 45223<br><br>    Plaintiff,<br>v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company, C/o Corporation Service Company, Registered Agent 50 West Broad Street, Suite 1330 Columbus, OH 43215<br><br>    Defendant. | Case No.:__-cv-_____<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

Plaintiff NORMAN HUSAR, individually and on behalf of all others similarly situated ("Plaintiff"), brings this Class Action Complaint against Defendant GENERAL MOTORS LLC ("Defendant" of "General Motors") and alleges as follows based on personal knowledge as to facts pertaining to his own experiences and on information, belief, and investigation as to all other matters:

## NATURE OF THE CASE

1. Defendant makes false and deceptive "Made in USA" claims on its ACDelco product packaging, which induces consumers to choose to buy Defendant's ACDelco parts instead of parts actually made in the USA, and to pay a premium price for auto parts believing them to be American made when they are not.

2. Plaintiff and Class members, as reasonable American consumers, place value on products made in the USA, and Defendant's ACDelco products' "Made in USA" representation was material to them.

3. However, Defendant's ACDelco products are not made in the USA. They are made in China.

4. As a result, Defendant's "Made in USA" claims are unlawful because they constitute unfair and deceptive acts or practices in consumer transactions under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345 *et seq.*, breach of express warranty, breach of implied warranty, and breach of implied warranty in tort.

5. Plaintiff brings this case as a class action under Federal Rule of Civil Procedure 23 to seek redress for the injuries Defendant has caused to Plaintiff and the other Class members and to put a stop to Defendant's unfair, deceptive, and unlawful acts or practices that violate consumer protection laws.

## JURISDICTION

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is brought as a class action under Fed. R. Civ. P. 23, the parties are citizens of different states, there are 100 or more potential Class members, and the amount in controversy exceeds $5,000,000, exclusive of costs.

7. The Court has personal jurisdiction over Defendant because the transaction giving rise to Plaintiff's claims occurred in Ohio.

8. Venue is proper in the Northern District of Ohio because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9. Plaintiff is a citizen of Ohio and resides in this District.

10. Defendant is a Delaware limited liability company with its principal place of business in Michigan. ACDelco is the premier brand of Defendant's original equipment automotive replacement parts.

## FACTUAL BACKGROUND

### *Defendant's Close Association with USA is a Selling Point*

11. General Motors is one of the most iconic American companies in what is historically a quintessentially American business: automobile manufacturing.

12. Defendant holds a unique place in American culture and is closely associated with America and Americans, including in film and in song. Defendant's cars are celebrated in certain unofficial American national anthems like "American Pie" by Don McLean, "Little Red Corvette" by Prince, and "Pink Cadillac," featured on Bruce Springsteen's album "Born in the U.S.A." Elvis Presley's pink Cadillac is still on display at the Graceland museum.

13. Defendant's Buick brand logo contains red, white and blue imagery as a not-so-subtle reminder of Defendant's USA origins. Cadillac is named after the French explorer who founded Detroit, the "Motor City" and epicenter of American automobile manufacturing for more than a century.

14. For the past thirty years or so, Defendant's vehicles, including Cadillacs and Chevy Suburbans, have been on prominent display in nationally televised motorcades as the "Official State Car" of the President of the United States.

*The Federal Trade Commission's "Made In USA" Policy*

15. Pursuant to statutory authority granted under 15 U.S.C. § 45 to regulate unfair and deceptive acts or practices, the Federal Trade Commission ("FTC") has concluded that "Made in USA" claims are important to consumers.

16. In 1995, the FTC commissioned studies into consumer perception of USA origin claims. The studies found that consumers expect that a product advertised as "Made in USA" be assembled in the USA and all or virtually all of the product is made of parts from the USA. *See* 62 Fed. Reg. 63756-01, 63764 (Dec. 2, 1997).

17. As a result of an extensive review of consumer perception evidence, public comments, a public workshop, and substantial historical legal authority, the FTC established the "All or Virtually All" standard for "Made in USA" claims in 1997. Under this standard, "Made in USA" means that "all significant parts and processing that go into the product are of U.S. origin, *i.e.*, where there is only a de minimis, or negligible amount of foreign content." *Id*. at 63765. The product must also be assembled in the USA. *Id*. at 63768.

18. In 2020, the FTC revisited and reaffirmed the "All or Virtually All" standard, concluding that consumers are likely to be deceived by an unqualified "Made in USA" claim for a product incorporating more than a de minimis amount of foreign content. *See* Staff Report of the Bureau of Consumer Protection of the Federal Trade Commission, *Made in USA: An FTC Workshop*, pp. 6-7 (June 19, 2020).[1]

*Plaintiff Purchased Defendant's Falsely Advertised Products*

19. Defendant markets and sells ACDelco auto parts, including but not limited to, ACDelco automatic transmission fluid filters.

---

[1] https://www.ftc.gov/system/files/documents/reports/made-usa-ftc-workshop/p074204_-_musa_workshop_report_-_final.pdf

20. On October 20, 2020, Plaintiff purchased an ACDelco automatic transmission filter packaged in a box stating "Made in USA." Prior to the purchase, Plaintiff saw and considered the "Made in USA" claim of origin for this product. Plaintiff decided to purchase the ACDelco transmission filter instead of another brand transmission filter because of the "Made in USA" claim of origin. When Plaintiff opened the box to begin installing the transmission filter on his vehicle, he was outraged to discover that stamped onto the surface of the product was the phrase "Made in China." None of the other component parts of the filter were stamped with "Made in USA" or any other country of origin.

21. Defendant's "Made in USA" claim was false, misleading, and likely to deceive a reasonable consumer. Defendant's transmission filter was not made in the USA. The product that Plaintiff purchased was made in China. Thus, Defendant's "Made in USA" claims on its packaging are false under the FTC's "All or Virtually All" standard.

22. Even if the "Made in China" inscription on the surface of Plaintiff's transmission filter applied only to the single plastic housing piece that bears the inscription, the "Made in USA" claim still fails the "All or Virtually All" standard and is unlawful, deceptive, and misleading. The plastic piece is a significant piece of the filter and is one of the five components of the filter (*i.e.*, it accounts for 20% of the transmission filter). The plastic piece attaches to the underside of the transmission, forms the top of the filter, and acts as a conduit and casing for transmission fluid into the filtering components of the filter as the fluid passes from the transmission through the filter and into the transmission fluid pan. As a result of its essential function and significance, it is not a negligible or de minimis component of the filter.

23. Plaintiff and Class members were injured because they would not have purchased the ACDelco products had they known that they were not made in the USA as the packaging

represents, or they would not have paid as much as they did had they known the true source of the products. Generally, ACDelco products sell at a higher price than comparable products of foreign competitors, and Plaintiff and Class members paid a premium for these ACDelco products.

## CLASS ALLEGATIONS

24. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a nationwide class ("Class") defined as follows:

> All persons who purchased in the United States an ACDelco product in packaging displaying "Made in USA" for end use and not for resale, where all significant parts and processing that go into the product are not of U.S. origin.

25. In addition, Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of a class of Ohio purchasers ("Subclass") defined as follows:

> All persons who purchased in Ohio an ACDelco product in packaging displaying "Made in USA" for end use and not for resale, where all significant parts and processing that go into the product are not of U.S. origin.

26. Excluded from the Class and Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

27. **Numerosity**: The Class and Subclass are each so numerous that joinder of individual members would be impracticable. While the exact number of Class members and Subclass members is presently unknown and can only be ascertained through discovery, Plaintiff believes that there are thousands of Class and Subclass members, if not more, as Defendant is one

of the largest automobile manufacturers in the United States. On January 5, 2021, Defendant announced that it had sold more than 2.5 million vehicles in the calendar year 2020.

28. **Commonality and Predominance**: There are several questions of law and fact common to the claims of the Plaintiff and members of the Class and Subclass, which predominate over any individual issues, including:

   a. Whether Defendant's ACDelco products were made in the United States;

   b. Whether Defendant misrepresented to Plaintiff and Class members that its ACDelco products are made in the USA;

   c. Whether Defendant's "Made in USA" representation created an express warranty;

   d. Whether Defendant breached its express warranty by making ACDelco products in a country other than the United States;

   e. Whether Defendant's "Made in USA" representation created an implied warranty;

   f. Whether Defendant breached its implied warranty by making ACDelco products in a country other than the United States;

   g. Whether Defendant's conduct violated the consumer protection laws of Ohio, the other 49 states, and the District of Columbia;

   h. Whether Plaintiff and Class members were harmed as a result of Defendant's unlawful conduct, and the measure and amount of Plaintiff's and Class members' damages in connection therewith;

   i. Whether Plaintiff and Class members are entitled to injunctive relief to require Defendant to cease its unlawful and deceptive practices in making false claims of origin.

29. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class and Subclass. All claims are based on the same legal and factual issues regarding Defendant's misrepresentations and omissions concerning the origin of ACDelco products with packaging stating "Made in USA."

30. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the proposed Class and Subclass, and Plaintiff does not have any interests antagonistic to those of the proposed Class and Subclass. Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation.

31. **Superiority**: A class action can best secure the economies of time, effort and expense, and promote uniformity. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Individual actions are not feasible and it is unlikely that individual members of the Class will prosecute separate actions. The trial and the litigation of Plaintiff's claims as a class action will be manageable.

## COUNT I
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Class)

32. Plaintiff repeats paragraphs 1–31 as if fully set forth herein.

33. The Uniform Commercial Code, U.C.C.§ 2-313(1), and Ohio Rev. Stat. § 1302.26, state that:

> (A) Express warranties by the seller are created as follows:
>
> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

8

  (B) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

34. Defendant's representation "Made in USA" on its ACDelco product packaging formed a part of the basis of the bargain between Defendant and Plaintiff and Class members, and it created an express warranty that the products shall conform to the affirmation, promise, or description on the packaging.

35. Defendant breached its express warranty by selling ACDelco products that were made in China. The products were not made in the United States as expressly warranted.

36. All conditions precedent have occurred or been performed.

37. As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff and Class members suffered damages by purchasing Defendant's ACDelco products because they would not have purchased them had they known the truth, or they would have paid less for them, and they received products that were worth less than the price they paid.

## COUNT II
### Breach of Implied Warranty; Merchantability; Usage of Trade
### (On Behalf of Plaintiff and the Class)

38. Plaintiff repeats paragraphs 1–31 as if fully set forth herein.

39. Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. U.C.C.§ 2-314(1); Ohio Rev. Code § 1302.27(A). Under the laws of Ohio and other states, these implied warranty protections may also be enforced against the manufacturer of a product. *See, e.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 865 (S.D. Ohio 2012); *Hartman v.*

*Mercedes-Benz, U.S.A., L.L.C.*, 2010 WL 907969, at *7 (N.D. Ohio 2010); *Risner v. Regal Marine Industries, Inc.*, 8 F. Supp. 3d 959, 995 (S.D. Ohio 2014); *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 288, 294 (1988).

40. To be merchantable, goods must, among other things, pass without objection in the trade under the contract description, and conform to the promises or affirmations of fact made on the container or label. U.C.C. § 2-314(2)(a), (2)(f); Ohio Rev. Code § 1345.27(B)(1), (B)(6).

41. Defendant manufactured ACDelco products in a country other than the United States, imported those products into the United States, and sold those products in the United States to Plaintiff and Class members.

42. Defendant's ACDelco products contained a defect such that the products would not pass without objection under the contract description, and they do not conform to the promises and affirmations of fact made on the container or label that the products are "Made in USA," because these products are made in China and not in the Unites States. As a result of the defect, Defendant's ACDelco products do not meet the reasonable expectations of consumers. The products have failed their ordinary, intended uses under the contract description and affirmations of fact on the products' packaging.

43. Accordingly, Defendant breached the implied warranty of merchantability because its ACDelco products would not pass without objection under the contract description, and they do not conform to the promises and affirmations of fact made on the container or label that its products are "Made in USA," because these products are made in China and not in the Unites States.

44. This defect existed at the time the ACDelco products left Defendant's control.

45. All conditions precedent have occurred or been performed.

46. As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiff and Class members suffered damages by purchasing Defendant's ACDelco products because they would not have purchased them had they known the truth, or they would have paid less for them, and they received products that were worth less than the price they paid.

### COUNT III
### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiff and the Class)

47. Plaintiff repeats paragraphs 1–46 as if fully set forth herein.

48. Plaintiff and Class members are consumers within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

49. Defendant is a supplier and warrantor within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4), (5).

50. Defendant's ACDelco products are consumer products within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

51. 15 U.S.C. § 2310(d)(1) provides a right of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty or implied warranty.

52. Defendant's "Made in USA" representation created express and implied warranties, as alleged above.

53. Defendant failed to comply with these express and implied warranties and caused Plaintiff and Class members to suffer damages by Defendant supplying ACDelco products that failed to conform to the "Made in USA" affirmation and promise stated on the packaging, because these products were made in China and not in the United States.

54. As a direct and proximate result of Defendant's failure to comply with its warranties, Plaintiff and Class members suffered damages by purchasing Defendant's ACDelco

products because they would not have purchased them had they known the truth, or they would have paid less for them, and they received products that were worth less than the price they paid.

## COUNT IV
### Violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq*. ("OCSPA")
### (On Behalf of Plaintiff and the Subclass)

55. Plaintiff repeats paragraphs 1–31 as if fully set forth herein.

56. Plaintiff and Ohio Subclass members are consumers under section 1345.01(D) of the OCSPA.

57. Defendant is a person and supplier who sold ACDelco products to Plaintiff and Subclass members in consumer transactions under sections 1345.01(A), (C) of the OCSPA.

58. Section 1345.02 of the OCSPA makes it unlawful for any supplier, such as Defendant, to commit an unfair or deceptive act of practice in connection with a consumer transaction, whether it occurs before, during, or after the transaction, including without limitation: representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not; or representing that the supplier has a sponsorship, approval, or affiliation that the supplier does not have. Ohio Rev. Code § 1345.02(A), (B)(1), (B)(2), (B)(9).

59. The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02, identifies the following as deceptive trade practices: causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; or using deceptive representations or designations of geographic origin in connection with goods or services. Ohio Rev. Code § 4165.01(A)(2), (A)(4).

60. In addition, in construing what constitutes unfair or deceptive acts under the OCSPA, the court "shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of [15 U.S.C. § 45(a)(1)]." Ohio Rev. Code § 1345.02(C).

61. Defendant made false and fraudulent statements, and misrepresented material facts regarding ACDelco products' country of origin, by making false representations on the products' packaging that the products were "Made in USA" when, in fact, they were made outside of the United States, or at the very least, contain non-negligible components made outside the United States.

62. Defendant concealed and omitted material facts regarding ACDelco products' country of origin by failing to disclose that the products were made outside of the United States, or at the very least, contain non-negligible components made outside of the United States.

63. As alleged above, Defendant's conduct is in violation of the FTC "Made in USA" rules, guidance, and enforcement policy in that Defendant makes unqualified country of origin claims while its ACDelco products do not comply with the "All or Virtually All" standard announced and enforced by the FTC under the statutory authority granted to it under the FTC Act, 15 U.S.C. § 45.

64. Defendant's misrepresentations, omissions, and concealment constitute unfair and deceptive acts or practices.

65. Defendant's misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

66. Defendant intended that Plaintiff and Subclass members rely on its false statements, misrepresentations, omissions, and concealment of material fact in purchasing ACDelco products.

67. Plaintiff and Subclass members reasonably relied on Defendant's misrepresentations, omissions, and concealment when they purchased ACDelco products.

68. Acting as reasonable consumers, had Plaintiff and Subclass members been aware of the true facts regarding the origin or source of the ACDelco products, they would not have purchased them or would have paid a lower price for the products than they paid.

69. Plaintiff and Subclass members suffered injuries in fact—*i.e.*, the loss of the money that they paid for ACDelco products that were not as advertised and represented.

70. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff and Subclass members suffered damages by purchasing Defendant's ACDelco products because they would not have purchased them had they known the truth, or they would have paid less for them, and they received products that were worth less than the price they paid.

71. Defendant has notice that its unlawful conduct constituted a violation of the OCSPA by the opinion in *Brown v. CincyAutos, Inc.*, No. 1:08-cv-372 (S.D. Ohio Jan. 20, 2009), Ohio Online Public Inspection File #10002751,[2] the FTC Enforcement Policy Statement on U.S. Origin Claims and Complying With the Made in USA Standard Guidance,[3] and federal courts' interpretations of the FTC Act in connection with such enforcement actions.

### COUNT V
### Violation of the Consumer Fraud and Deceptive Trade
### Practices Acts of the Various States and District of Columbia
### (On Behalf of Plaintiff and the Class)

72. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-31 with the same force and effect as though fully set forth herein.

---

[2] https://opif.ohioattorneygeneral.gov/Case/Detail/3399
[3] https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf

73. Plaintiff brings this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

  a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

  b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

  c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

  d. the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

  e. the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

  f. the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

  g. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

  h. the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

  i. the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

  j. the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

  k. the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

  l. the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

  m. the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

  n. the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

  o. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

  p. the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

  q. The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

  r. the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

  s. the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.     the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.;

u.     the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq*.;

v.     the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq*.;

w.     the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq*.;

x.     the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq*.;

y.     the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*.;

z.     the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq*.;

aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq*.;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq*.;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq*.;

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq*.;

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq*.;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq*.;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq*.;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq*.;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

jj.     the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

mm.     the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

nn. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

qq. the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr. the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss. the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt. the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv. the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww. the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx. the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

yy. the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

zz. the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq*.

74. Defendant's ACDelco products are consumer goods.

75. Defendant made false and fraudulent statements, and misrepresented material facts regarding ACDelco products' country of origin, by making false representations on the products' packaging that the products were "Made in USA" when, in fact, they were made outside of the United States, or at the very least, contain non-negligible components made outside the United States.

17

76. Defendant concealed and omitted material facts regarding ACDelco products' country of origin by failing to disclose that the products were made outside of the United States, or at the very least, contain non-negligible components made outside of the United States.

77. As alleged above, Defendant's conduct is in violation of the FTC "Made in USA" rules, guidance, and enforcement policy in that Defendant makes unqualified country of origin claims while its ACDelco products do not comply with the "All or Virtually All" standard announced and enforced by the FTC under the statutory authority granted to it under the FTC Act, 15 U.S.C. § 45.

78. Defendant's misrepresentations, omissions, and concealment constitute unfair and deceptive acts or practices.

79. Defendant's misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

80. Defendant intended that Plaintiff and Class members rely on its false statements, misrepresentations, omissions, and concealment of material fact in purchasing ACDelco products.

81. Plaintiff and Class members reasonably relied on Defendant's misrepresentations, omissions, and concealment when they purchased ACDelco products.

82. Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the origin or source of the ACDelco products, they would not have purchased them or would have paid a lower price for the products than they paid.

83. Plaintiff and Class members suffered injuries in fact—*i.e.*, the loss of the money that they paid for ACDelco products that were not as advertised and represented.

84. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff and Class members suffered damages by purchasing Defendant's ACDelco

products because they would not have purchased them had they known the truth, or they would have paid less for them, and they received products that were worth less than the price they paid.

85. Defendant has notice that its unlawful conduct constituted a violation of the OCSPA by the opinion in *Brown v. CincyAutos, Inc.*, No. 1:08-cv-372 (S.D. Ohio Jan. 20, 2009), Ohio Online Public Inspection File #10002751,[4] the FTC Enforcement Policy Statement on U.S. Origin Claims and Complying With the Made in USA Standard Guidance,[5] and federal courts' interpretations of the FTC Act in connection with such enforcement actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays that the Court enter an Order:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class and/or Subclass as defined herein;

B. Designating Plaintiff as representative of the Class and/or Subclass, and designating undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class and/or Subclass, and against Defendant;

D. Awarding Plaintiff and Class and/or Subclass members all relief to which they are entitled, including awards for their actual damages, statutory damages, treble damages, and punitive damages for Defendant's willful and intentional conduct, and equitable relief, including injunctive relief to require that Defendant cease its unlawful conduct;

E. Awarding Plaintiff and the Class and/or Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F. Granting all such further and other relief as the Court deems just and appropriate.

---

[4] https://opif.ohioattorneygeneral.gov/Case/Detail/3399
[5] https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

    Respectfully submitted,

    By: */s/ Marc E. Dann*
        Marc E. Dann (0039425)
        Brian D. Flick (0081605)
        Michael A. Smith, Jr. (0097147)
        DANN LAW
        P.O. Box 6031040
        Cleveland, Ohio 44103
        (216) 373-0539 phone
        (216) 373-0536 facsimile
        *notices@dannlaw.com*

        Thomas A. Zimmerman, Jr.
        (pro hac vice anticipated)
        *tom@attorneyzim.com*
        Jeffrey D. Blake
        (pro hac vice anticipated)
        *jeff@attorneyzim.com*
        ZIMMERMAN LAW OFFICES, P.C.
        77 West Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020 telephone
        (312) 440-4180 facsimile
        www.attorneyzim.com
        *firm@attorneyzim.com*

        Counsel for the Plaintiff, Class, and Subclass